MOORE v. FIRST STATE BANK OF TEAGUE et al. (No. 7240.)

(Court of Civil Appeals of Texas. Dallas. Jan. 23, 1915.)

1. VENDOR AND PURCHASER ☞301—RESCISSION BY PURCHASER—NONPERFORMANCE BY VENDOR.

A vendor under an executory contract of sale, whereby he retains the superior title, may, upon failure of the purchaser to perform, either sue for the purchase money and foreclose his lien, or rescind the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 844; Dec. Dig. ☞ 301.]

2. VENDOR AND PURCHASER ☞101—RESCISSION BY PURCHASER—NOTICE.

Where a purchaser has partly performed a contract for the purchase of land, the vendor must give him reasonable notice of his intention to rescind for nonperformance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 170–174; Dec. Dig. ☞101.]

3. VENDOR AND PURCHASER ☞98—RESCISSION BY PURCHASER — RETURN OF MONEY PAID.

Where a petition in equity to recover possession of land sold under an executory contract alleged that the contract provided that upon default in the payment of one of the notes all should become due, that defendant failed to pay two of the notes when due, and the plaintiff notified him that unless they were paid at a certain time the contract would be rescinded, that defendant entered into a conspiracy to deprive plaintiff of the rents arising from the property, and that the amount paid by defendant on the purchase price was all applied on the payment of the broker's commission, which allegations were not denied and therefore must be taken as true under Acts 33d Leg. c. 127, § 4, the defendant is not equitably entitled to a return of the money paid by him as a condition for the rescission of the contract by the plaintiff.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 163–165; Dec. Dig. ☞98.]

Appeal from District Court, Freestone County; H. B. Daviss, Judge.

Action by the First State Bank of Teague against C. N. Moore and others. Judgment for the plaintiff, and defendant Moore appeals. Affirmed.

Boyd & Bell, of Teague, for appellant. D. T. Garth, of Teague, for appellee.

TALBOT, J. This suit was instituted by the appellee, First State Bank of Teague, Tex., against the appellant, C. N. Moore, and against Fred Carrington, D. W. Carrington, and C. D. Phillips, alleging in an amended petition filed February 24, 1914, in substance:

That on or about the 1st day of October, 1912, plaintiff was the owner and in possession of lot

No. 1 in block No. 107 in the city of Teague, Tex., less 6½ inches off the east side of said lot, and commonly known as the First State Bank building. That on said 1st day of October, 1912, plaintiff by its proper officers made and executed, but did not deliver, a vendor's lien deed of conveyance, being an executory contract to thereby convey to C. N. Moore said property. That the consideration was the sum of $10,000. That C. N. Moore paid plaintiff $1,000 and executed and delivered to plaintiff 60 vendor's lien notes each for the sum of $150, the first note due December 1, 1912, and one of said notes due on the 1st day of each succeeding month thereafter, all said notes bearing interest from date until paid at the rate of 8 per cent. per annum. That, for the reason that said Moore agreed to pay $1,800, said deed was not to be delivered until $1,800 was paid. That it was agreed that said deed should not be delivered until C. N. Moore should deliver a deed to plaintiff conveying certain land. That it was agreed that the rents should be collected on the building by Moore and paid on his said notes. That Moore failed and refused to deliver a deed to plaintiff to said land; however he entered into possession of plaintiff's said lot. That C. N. Moore made the payments due December 1, 1912, and January and February, 1913, by collecting the rents and paying same to plaintiff with an additional amount of $75 or about that amount each month. That it was agreed that all rents should be paid to plaintiff on said notes. That the deed and notes retained a vendor's lien against the property sued for; the superior title remaining in plaintiff. That on January 1, 1913, C. N. Moore entered into a rental contract for one year letting said premises to C. D. Phillips for the sum of $83.33⅓ per month, payable on the 1st day of each month. That C. N. Moore collected the rents from Phillips on March 1, 1913, and failed to pay his note maturing on March 1, 1913, and failed to pay his note due April 1, 1913. That plaintiff declared all said notes due. That plaintiff notified C. N. Moore in the month of March and during the first part of April that if he failed to pay said notes same would be matured, and notified C. N. Moore about the first of April that if he did not pay said notes that the contract would be rescinded. That Moore failed to respond to said notice, and on or about April 15, 1913, plaintiff rescinded its contract of sale and canceled same, forfeiting all the rights of C. N. Moore. That C. N. Moore fraudulently assigned his rent contract with C. D. Phillips, to one Fred Carrington, and that Carrington was setting up a claim to the rents from said premises. That plaintiff demanded payment of rents for the months of March and April, 1913, which was refused. That C. N. Moore, Fred Carrington, and C. D. Phillips had entered into a conspiracy to defeat the plaintiff out of its rents, to plaintiff's damage $1,000. That the rents on said property were reasonably worth the sum of $85 per month. That defendant had defeated plaintiff of its rents for the months of March and April, 1913, and feared that plaintiff would lose its rents for the remainder of the year 1913, and prayed for a writ of injunction restraining C. D. Phillips from paying any rents to Moore and Carrington, and that the rescission of the contract of sale with Moore be ratified, and the executory contract canceled, and prays judgment for title and possession of its land and for rents from the 1st day of March, 1913, costs of suit, and general relief, etc.

On February 24, 1914, the Waco Development Company filed its plea of intervention claiming title to the land sued for, alleging that on the ——— day of ———, 1913, plaintiff, First State Bank, sold and conveyed the property in controversy to intervener, by its deed duly executed and delivered, and that it paid to plaintiff $4,000 in cash and executed its vendor's lien notes to plaintiff for $7,000; that its deed was duly recorded in Freestone county, and prayed judgment for title and possession of the land sued for, subject to plaintiff's vendor's lien and for costs.

Defendants D. W. Carrington and C. D. Phillips filed their answers disclaiming all interest in the land sued for, defendant Phillips asking that he be protected, having paid all rents due by him.

Defendant C. N. Moore filed his first amended answer February 28, 1914, disclaiming any interest in the premises sued for, and admitting that plaintiff agreed on October 1, 1912, to execute and deliver to him a deed of conveyance to the property sued for; that he agreed to pay to plaintiff $10,000 for same; that he paid plaintiff $1,000 as alleged; that he executed 60 vendor's lien notes for the sum of $150 each and delivered same to plaintiff; that he paid the notes falling due December 1, 1912, and January and February, 1913, as alleged; that he paid the rents arising from the premises, with an additional amount of $75 each month for three months as alleged, aggregating $450; that plaintiff never executed and delivered to him a deed to said property, as it agreed to do, in fact admitting every material allegation made by the plaintiff in its amended petition, and alleging that he had performed every part of his agreement entered into with plaintiff, and that plaintiff had failed and refused to carry out its part of said agreement to execute and deliver to him a deed to said property; that plaintiff had received all rents arising from the property since October 1, 1912, except two months, being for March and April, 1913, aggregating the sum of $166.66, which amount he alleges he tendered into court; that he paid plaintiff $1,000 and the further sum of $225 in addition to rents; and that plaintiff had failed and refused to pay and return to him any part of said sum of $1,225, but attempted to forfeit all the rights of defendant Moore in said contract, and Moore prayed judgment that title be vested in plaintiff (if necessary, and that plaintiff have judgment for any rents due since October 1, 1912, and that he have his judgment against plaintiff for $1,225 and for general relief.

Plaintiff, First State Bank, filed its first supplemental petition on February 28, 1914, in which it alleged that it was agreed that defendant C. N. Moore was to pay $1,800 before a deed was to be acknowledged and delivered to the property, and, if Moore had any equity, that he had assigned same to Carrington, and further that the $1,000 was not paid in money by C. N. Moore, but a certain equity in land was delivered to A. B. Foster and A. B. Farrington as a commission and was not worth over the sum of $500 in cash, and prayed that C. N. Moore take nothing; that Moore did not pay the

$1,800, but began to convert the funds received from the rents of the property in controversy to his own use and benefit.

The case was tried without the intervention of a jury, and the court rendered judgment that the defendants C. D. Phillips and D. W. Carrington go hence and recover of the plaintiff their costs; that plaintiff, First State Bank of Teague, as against defendants C. N. Moore and Fred Carrington, recover the title and possession of the land and premises in controversy and all rents from April 1, 1913, up to and including the month of December, 1913; that defendant C. N. Moore take nothing as to the amount claimed to have been paid by him on the contract for the purchase of said land and premises; that the writ of injunction sued out be perpetuated as prayed for. The court further adjudged that the intervener, Waco Development Company, recover, subject to plaintiff's vendor's lien, the possession of the land and premises sued for, and as against plaintiff all costs incurred by it, and that Moore and the Carringtons take nothing as against C. D. Phillips on his lease contract, and that said contract be canceled. From the judgment that he take nothing, as to the amount paid by him on his contract of purchase of the premises in suit, C. N. Moore has appealed.

The first assignment of error is as follows:

"The court erred in rendering judgment herein against defendant C. N. Moore and in not requiring plaintiff, First State Bank, to refund to this defendant the amount paid plaintiff, to wit, $1,225, less $166.66, it being admitted by plaintiff that defendant C. N. Moore had paid $1,000 and also paid the further sum of $75 per month for three months in excess of rents, same being paid as part of the purchase money for the land sued for."

This assignment, as do the others presented, submits for our decision the question of whether or not the court erred in denying to the appellant, Moore, a recovery from the appellee, bank, under the circumstances of the case, the amount of $1,225 paid by him on his executory contract of purchase of the land involved in the suit.

[1, 2] This is not a suit in which there was a tender of the balance of the purchase money and prayer for the specific performance of the contract. On the contrary, appellant disclaimed any title to or interest in the land sought to be recovered, and asserted no right to specific performance, but, admitting appellee's right to recover and repossess itself of the land, claims that, inasmuch as he had in part performed the contract of purchase by paying a portion of the purchase money, it would be inequitable to allow appellee to retain such portion, and the trial court should therefore have rendered judgment in his favor for the same. As clearly appears, the contract between the appellant and appellee was executory, and the superior title to the land remained with appellee. Under such a contract, the vendor, upon failure of the vendee to perform according to its terms, has the right to sue for the pur-

chase money unpaid and foreclose his lien, or he may, upon default of the vendee, rescind the contract and recover the land. Such right can only be defeated ordinarily by performance upon the part of the vendee. That this is the law of this state is too well settled to require the citation of authorities. If, however, there has been a part performance by the vendee, as paying a portion of the purchase money, or taking possession and making improvements under the contract, he would be entitled to reasonable notice of the vendor's intention to rescind. Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88. After announcing the foregoing rule in the case just cited, it is said:

"The reason of this rule is obvious. He may be able to give a reasonable excuse for his failure to fully perform that would entitle him in equity to protection to the extent he had performed."

But it is further held in said case that if the vendee has actually abandoned the contract, or has so acted as to create the reasonable belief on the part of the vendor that he has abandoned it, the vendor may rescind without notice of his intention, notwithstanding the part performance of the vendee, and convey the land to another.

[3] In the case before us appellee alleged under oath that the notes executed by the appellant for the unpaid purchase money stipulated that, if appellant defaulted in the payment of any one of said notes or the interest thereon when due, the appellee could declare all of said notes not paid at the time of such default due, and that upon appellant's failure to pay the note which became due and payable on the 1st days of March and April, 1913, appellee, as authorized by the terms of said notes, declared all the purchase-money notes then unpaid due and payable; that appellee notified appellant that he had declared said notes due and payable, and that if they were not paid by the 1st of April, or a short time thereafter, his contract of purchase would be rescinded; and that thereafter on the 15th day of April, 1913, the appellee by proper and lawful action of its board of directors did rescind and annul said contract. Appellee also alleged, as heretofore stated, that appellant, Moore, entered into a contract with C. D. Phillips whereby he leased to the said Phillips the land and premises in controversy for the term of one year at $83.33⅓ per month payable on the 1st day of each month; that it was agreed between appellant and appellee that the rents arising from said lease contract should be paid on said purchase-money notes; but that the appellant, Fred Carrington, and the said Phillips entered into a conspiracy to deprive appellee of said rents and refused to pay the same to appellee when the March and April notes became due. These allegations were made by the appellee under oath. They were not denied by the appellant in his answer, and must therefore, under the provisions of the statute passed by the Legislature of this state in

1913, be taken as confessed. Appellant did allege in general terms that he had performed his part of the agreement made and entered into between him and the appellee, but that he did not in fact do so is placed beyond all question by the record sent to this court. He did not testify himself, nor did he offer the testimony of any witness in support of the allegations of his answer. T. J. Alexander, called by the appellee, was the only witness who testified at the trial of the case. He testified in substance, among other things, as is alleged in appellee's supplemental petition, that appellee did not get any part of the $1,000 claimed to have been paid by appellant on his contract of purchase; that Foster & Farrington were to have all above $9,000 they made out of the sale of the property in controversy; and that they made some kind of trade with appellant by which they were to get from him land valued at $1,000.

We do not believe the record shows a case where the court would be authorized to say that upon principles of equity the appellee should be required to refund to appellant the portion of the purchase price paid by him on his contract for the purchase of the land in question. That appellant failed and refused to pay the purchase-money notes maturing, respectively, March 1 and April 1, 1913, is not disputed; that he was notified by appellee that unless said notes were paid the contract of purchase would be rescinded is not denied; the allegation of appellee that he entered into a conspiracy to deprive appellee of the rents arising from the renting of the property contracted by him to be bought in violation of his agreement that said rents should be applied as a credit on the purchase-money notes is likewise not denied; and that appellee got no part of the $1,000 sought to be recovered by the appellant, but that such an amount was only to be paid to Foster & Farrington in land as their commissions for negotiating and securing for appellant the contract made with appellee for the purchase of the land in controversy in the suit is reasonably deducible from the pleadings and the evidence. From the record therefore before us the conclusion is clearly warranted, if not irresistible, that appellant, before the institution of this suit, had abandoned his contract of purchase, or so acted as created the reasonable belief on the part of appellee that he had abandoned it, and was not entitled to recover back any portion of the purchase money paid.

The judgment of the court below is affirmed.