## CANON v. SCOTT et al. (No. 1207.)

(Court of Civil Appeals of Texas. El Paso. April 14, 1921. Rehearing Denied May 12, 1921.)

**1. Quieting title ⊜30(3) — Former owners held not necessary parties in suit to set aside oil and gas lease.**

Where a landowner conveyed an undivided interest to another under an executory contract retaining a vendor's lien, and such other executed an oil and gas lease, and subsequently reconveyed to his grantor, who then conveyed the title to plaintiffs, in a suit by plaintiffs to set aside the lease neither the original owner nor the maker of the lease were necessary parties; both having conveyed their interests, and the maker of the lease having filed a disclaimer at a former trial.

**2. Vendor and purchaser ⊜102—Execution of deeds of trust held not a rescission of executory contract to convey.**

Where a landowner conveyed an undivided. interest under an executory contract retaining a vendor's lien, and the grantee executed an oil and gas lease to a third party, that before such lease was executed the owner executed deeds of trust to others without the grantee's knowledge or consent *held* not to effect the rescission of the conveyance to such grantee, nor to put the title again in the former owner.

**3. Vendor and purchaser ⊜278—Vendor's failure to enforce rights under executory contract, though barred by limitations, held to vest superior title in grantee.**

Where a landowner made an executory contract to convey, retaining a vendor's lien in the purchase-money notes, but failed to sue to foreclose the lien, or otherwise to take steps to recover the land, until limitations barred his right to recover, the superior title then vested in the grantee, in view of Acts 1913 (Sp. Sess.) c. 27 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695).

**4. Estoppel ⊜67—Offering in evidence lease sought to be set aside, waiver of execution and delivery thereof.**

In a suit to set aside an oil and gas lease as a cloud on title, where plaintiffs offered the lease in evidence, they waived any question of its execution and delivery.

**5. Frauds, statute of ⊜44(4)—Lease for more than one year "conveyance" to be subscribed and delivered.**

A lease of lands for more than one year is a conveyance under Vernon's Sayles' Ann. Civ. St. 1914, art. 1103, requiring that a conveyance of land must be subscribed and delivered by the party disposing of the same.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conveyance.]

**6. Appeal and error ⊜1050(1)—Admission of deeds of trust to show claim of ownership by plaintiffs' grantor, if error, held harmless.**

In a suit to set aside an oil and gas lease as a cloud on title, admission of deeds of trust by

plaintiffs' grantor to a third person to show claim of ownership by such grantor, if error, *held* harmless.

**7. Mines and minerals ⊕⇒59 — Interest under lease sought to be set aside held a vested legal interest, not revoked by lessor's subsequent deed.**

Where a landowner conveyed an undivided interest by executory contract retaining a vendor's lien, but failed to enforce his rights thereunder until barred by limitations, so that the superior title vested in the grantee, and the grantee thereupon executed an oil and gas lease to a third person, *held* that the interest acquired by such third person, while only a right to develop the mineral, was a present vested right to enter and produce minerals, and that such interest was not revoked by lessor in a subsequent deed of the land to his grantor.

**8. Vendor and purchaser ⊕⇒242—Burden held upon plaintiffs to show want of actual notice of lease sought to be set aside.**

In a suit to set aside an oil and gas lease as a cloud on title, where plaintiffs claimed title free of the mineral lease, the burden was on them to plead and prove want of actual notice thereof.

On Motion for Rehearing.

**9. Vendor and purchaser ⊕⇒101—Vendor may rescind without notice only where no attempt to perform.**

It is only where there has been no attempt to perform any part of the contract that the vendor may rescind without notice.

**10. Vendor and purchaser ⊕⇒99—Vendee may defeat forfeiture by tender of money due.**

The vendee when sued for the land may defeat a forfeiture, no matter how long he may have been in default, by tender of the money due.

**11. Mines and minerals ⊕⇒59—When oil and gas lease, given in consideration of development, may be revoked stated.**

Where the oral consideration of an oil and gas lease is development, and the lease fails to impose on the lessee any obligation to develop, lessee acquired no title, but only a right to develop, which may be revoked any time by lessor prior to entry by lessee, assuming that only a nominal consideration has been given for the lease.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by J. M. Scott and another against M. B. Canon. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

See, also, 217 S. W. 429.

Norman, Shook & Gibson, of Rusk, for appellant.

Scott, Brelsford & Smith, of Eastland, and W. W. Ballew, of Corsicana, for appellees.

WALTHALL, J. This suit was brought by J. M. Scott and T. J. Carmody against M. B. Canon, to cancel an oil and gas lease, and to remove the cloud cast thereby from their title. Appellees allege that on the 23d day of March, 1918, they were seized and possessed of 80 acres of land out of the J. W. Cook survey in Eastland county, Tex., describing same by metes and bounds, and in possession of same. That Canon is asserting some claim or interest in and to the mineral rights under an undivided one-half interest of said 80 acres evidenced by an oil and gas lease, in writing, bearing date of March 1, 1918, and signed by Festus Crysup and acknowledged the 1st day of August, 1918, and not filed for record before August 3, 1918. Appellees allege that Crysup had no interest whatever in said land at the date of the execution of said gas and oil lease; that said lease was fraudulently and fictitiously dated on the 1st day of March, 1918, when as a matter of fact it was not signed or executed until the 1st day of August, 1918, and was executed for the sole purpose of attempting to cast a cloud upon appellees' title to said land.

Appellees show that they acquired the fee-simple title to one-half of said 80 acres of land from W. H. Willis by warranty deed, of date March 23d, filed for record April 3, 1918; that Willis was the legal and equitable owner thereof when same was conveyed to them; that appellant claims title under Crysup by reason of an executory contract made with Willis on May 29, 1911, wherein Willis conveyed to Crysup an undivided one-half interest in said land in consideration of $100 cash and two promissory notes, one for $400 and one for $435, each of said last-named date, due respectively, May 29, 1912, and May 29, 1913, each bearing interest and expressing a vendor's lien on the land conveyed and said lien reserved in the deed; that Crysup never entered into possession of said land, and never paid the purchase-money notes, but defaulted in their payment, and that after the maturity of said notes Willis rescinded said sale and entered into possession of said land, and continued in possession and ownership up to March 23, 1918, when he conveyed to appellees by warranty deed; that Willis' ownership was further evidenced by the following: On September 16, 1913, he (Willis) executed to B. D. Daniel, trustee (evidently meaning Dashiell) a deed of trust to secure this note to the Farmers' (Guarantee) State Bank at Jacksonville, Tex., in the sum of $5,200, and also executed a second deed of trust on August 15, 1915, to B. D. Daniel, trustee (evidently meaning Dashiell), to secure a note to the same bank for $2,031.85; that on the 2d day of March, 1918, Crysup by warranty deed conveyed said land to Willis, the consideration recited being the cancellation of said two notes for $400 and $435, and reciting that said deed was for the purpose

of canceling said notes and making a perfect record title from Willis to appellees; that at the time appellant, Canon, secured said lease contract from Crysup he knew that appellees claimed said land under their purchase from Willis, and that Crysup owned no interest therein, never having paid the purchase money, and that the conveyance from Willis to Crysup had been rescinded by Willis in 1913; that Canon and Crysup, acting in collusion, had the lease fictitiously dated March 1, 1918, when in fact said lease was not signed, executed, or delivered until August 1, 1918; denied that Canon was an innocent lienholder; that said lease creates a cloud upon appellees' title. Appellees ask for judgment against Canon canceling the oil and gas lease and removing cloud from title.

Appellant answered, suggesting that Willis and Crysup were necessary parties to this suit, and objected to going into trial without them being made parties herein; further answered by general demurrer, special exceptions, general denial, special denials, not guilty in so far as same relates to an undivided one-half interest in the oil and gas mineral rights on and under said land, and the right to develop and exploit same with rights of ingress and egress for that purpose, and disclaims as to interest in the land except as to said interest in the oil and gas and mineral rights, and rights of ingress and egress. He further alleges that on the 1st day of March, 1918, Crysup was the legal owner in fee simple of an undivided one-half interest in said 80 acres of land, his deed duly registered; that the two notes to Willis, shown to have been retained therein, were on the 1st day of March, 1918, barred by the statute of limitation; that on said day and date Crysup made and delivered to him (Canon), for a valuable consideration then and there paid, a valid gas and oil lease to an interest in said land itself, which right is not yet expired, and which he (Canon) is now entitled to exercise; that said instrument was duly acknowledged by Crysup on the 1st day of August and filed for record on the 3d day of August, 1918, which said instrument contains covenants of general warranty, and which gave appellant the right to redeem for any lien or other valid outstanding obligation against said land, and that thereby he became invested with both the legal and equitable title in the oil, gas, and other mineral rights on and under said land, and such interest in the land as was necessary to exploit same. Appellant further alleged that if Crysup had not title to the land at the time of the execution and delivery of said lease, appellant had no knowledge, actual or constructive, of said want of right, and paid said consideration in good faith and without notice; that he is an innocent purchaser in good faith, without notice and for a valuable consider-

ation, of said mineral rights on and under said land.

The case was tried without a jury, and judgment rendered for appellees. The court did not file findings of facts.

### Findings of Fact.

On October 26, 1910, R. C. Reed and wife, by general warranty deed, conveyed the land in controversy to W. H. Willis.

On May 29, 1911, W. H. Willis, by general warranty deed in usual form, conveyed the land in controversy to Festus Crysup, reciting the consideration of $100 paid and two promissory notes, one for $400 and one for $435, each bearing the date of the deed and due in one and two years, respectively, with interest, "with vendor's lien." The deed was recorded May 30, 1911.

On September 16, 1913, W. H. Willis executed a deed of trust on the land in controversy to B. D. Dashiell, trustee, to secure a note to the Farmers' Guarantee State Bank of Jacksonville, Tex., in the sum of $5,200; likewise a deed of trust on the land in controversy to the same party, as trustee, and to secure the same note, on a note dated August 9, 1915. Each of said deeds of trust was duly filed for record and recorded.

On March 23, 1918, W. H. Willis by general warranty deed conveyed the land to appellees, J. M. Scott and T. J. Carmody, for the consideration of $500 paid.

A release from the Farmers' Guarantee State Bank of the deed of trust as to the above $2,031.65 note is shown in the record. No release is shown in the record as to the $5,200.

An oil and gas lease, in the usual form of such instruments, with the usual covenants and agreements was signed by Festus Crysup on the 1st day of March, 1918, reciting a consideration of $200 cash in hand paid, and the covenants and agreements therein contained, "grant, demise, lease and let" to Dr. M. C. Canon for the sole and only purpose of mining and operating for oil, gas, and minerals, laying pipe lines and building tanks, power stations and structures thereon to produce, save and take care of said products, "½ the undivided interest in and to all that certain tract of land consisting of 80 acres," and by metes and bounds describing and embracing the land involved in this suit. The grant is for a period of five years and as long as oil, gas, or minerals or either is produced in paying quantities. One-eighth of the product was to be delivered to Crysup. Canon was to pay to Crysup $20 annually as rental after 1st of March, 1923, in event no well was commenced by that date, and if rental was not paid lease was to terminate. Assignment by both parties is reserved. At the time Crysup signed the lease he did not then acknowledge it. Canon received the lease at the time it was signed,

and remarked that he would have it acknowledged later. The lease was duly acknowledged on the 1st day of August, 1918. The record does not show that the lease was filed for record or recorded, but appellant alleges that it "was not filed for record until August 3, 1918." The consideration actually paid or given for the lease is most uncertain, rendered so by the doubtful character of the evidence, but, as we view it, was the cancellation of a debt owed by Crysup to Canon.

On the 2d day of August, 1918, by general warranty deed, in consideration of $100, the receipt of which was acknowledged, and the cancellation and surrender to him by Willis of the said two notes given by Crysup to Willis as a part of the consideration in the deed from Willis to Crysup for the land in controversy, one note for $400 and one note for $435, and above more fully described, Festus Crysup conveyed to W. H. Willis the land in controversy. The deed recites that the conveyance is made for the "purpose of connecting up the title to said property and to give J. M. Scott and T. J. Carmody a good title thereto under and by virtue of deeds from said Willis and Ragsdale et al., heretofore given and recorded * * * and also said lien may be released and said deed from Willis to said Scott and Carmody be properly supported through this instrument." This deed was duly acknowledged on the date of its execution. The record does not show its registration.

At the time Canon took the oil and gas lease from Crysup, he had in his possession and had examined the deed from Willis to Crysup, and knew at that time that the said two notes, one for $400 and one for $435, had been given by Crysup to Willis as a part of the consideration for the land in controversy, and that a vendor's lien to secure said notes had been reserved to secure their payment, but made no inquiry of Willis as to whether said notes had been paid or said lien released, nor did he require of Crysup an abstract of title.

Before buying the Willis half interest in the land in controversy appellee Scott had purchased of Ragsdale one-half interest in the land in controversy, but the record does not show when same was purchased, nor whether the conveyance was of record.

Appellee Scott testified on the trial of the case, but the record does not disclose whether or not he or Carmody had actual knowledge of the oil and gas lease at the time of their purchase from Willis. The record does not disclose who was in the actual possession of the land in controversy at any time, or whether any one was in such possession or exercising actual control over the land.

Appellant presents 12 assignments of error: First, to the overruling of his plea of necessary parties; second, in overruling the special exception to the effect that the petition does not state the legal effect of the lease sought to be canceled; third, in overruling the exception, as the petition shows that Crysup had a deed to the land at the time of making the lease, and that at that time the Crysup notes to Willis were barred by statute of limitation, thereby losing to Willis the superior title and the vendor's lien and prior to the Willis deed to appellees; fourth, to the overruling of the special exception that the averments of the petition as the rescission of the Willis deed to Crysup are insufficient; fifth, sixth, seventh, and eighth, error in rendering judgment for appellees on the several grounds stated, and in not rendering judgment for appellant, the evidence failing to show that Willis had rescinded the conveyance to Crysup; ninth and tenth, in admitting in evidence over objection, the Willis deeds of trust of Willis to Dashiell, trustee, for the Farmers' Guarantee State Bank; eleventh, in admitting over objection the Willis deed to appellees; twelfth, in admitting in evidence over objection deed from Crysup to Willis.

From the view we take of the controlling issues in the case we need not discuss all of the assignments in detail presented in the record.

[1] Crysup and Willis having the right to convey their interests in the land, and having conveyed, and Crysup having filed a disclaimer at a former trial, they were not, in our opinion, necessary parties to the suit as presented by the record, as all of the issues can be determined without them; and especially would this be true, as no evidence was offered on some of the issues that would seem to suggest Crysup as a proper, if not a necessary, party.

The deeds of trust executed by Willis to Dashiell to secure the Farmers' Guarantee State Bank in the payment of the two notes did not, in our opinion, have the legal effect to rescind the conveyance Willis had made to Crysup on the 29th day of May, 1911. At the time of the execution of the deeds of trust Willis had the right to rescind if he then owned the two Crysup notes, which does not appear; the two notes given by Crysup to Willis being past due and unpaid.

[2] The sole and only facts of the execution of the deeds of trust, in the absence of any evidence showing that Crysup consented thereto, and so far as the record shows, without his knowledge, did not effect a rescission of the conveyance and put the title again in Willis.

[3, 4] On the 1st day of March, 1918, Willis had not rescinded the conveyance to Crysup, nor had he brought suit on either of the two Crysup notes to foreclose the vendor's lien, nor had he otherwise taken steps to recover the land. The statute of limitation had then barred his right to recover on the notes, and barred his right to recover the

land, and the superior title then vested in Crysup. Act Special Session of the Legislature of 1913, p. 39 (Vernon's Sayles' Tex. Civ. Statutes, art. 5695); Adams v. Harris, 190 S. W. 245; R. B. Godley Lumber Co. v. C. C. Slaughter Co., 202 S. W. 801. On the 1st day of March, 1918, Crysup executed and delivered the oil and gas lease to Canon. The lease was not then acknowledged, nor does the record show that it was then witnessed, but it was accepted by Canon, and was sufficient to sustain the oil and gas lease. True, there was an allegation of fraud and conspiracy between Crysup and Canon in the execution and delivery of the lease, but no evidence of fraud or conspiracy was offered, and no attempt to show either, and appellees offered the oil and gas lease in evidence, thus waiving any question of its execution and delivery. Robb v. Robb, 41 S. W. 92; McLane v. Canales, 25 S. W. 29; Morgan v. Baker, 40 S. W. 27.

[5] It has been settled in this state that a lease to lands for more than one year is a conveyance under article 1103, Vernon's Sayles' Ann. Civ. St., requiring that a conveyance of land from one person to another must be subscribed and delivered by the party disposing of the same. Starke v. Cuffey Petroleum Co., 98 Tex. 542, 86 S. W. 3, 4 Ann. Cas. 1057.

On the 2d day of March, 1918, Crysup, by warranty deed conveyed to Willis, and on the 23d day of March, 1918, Willis conveyed to Scott and Carmody. Appellees allege that at the time Canon secured from Crysup the oil and gas lease he well knew that Scott and Carmody claimed said land under Willis, and that Crysup owned no interest in the land, and that the conveyance from Willis to Crysup had been rescinded by Willis in 1913, but the record does not sustain the allegations. There is nothing in the evidence tending to show that Canon then knew or had knowledge of any facts that would tend to show that Scott and Carmody claimed said land under Willis. It seems to us that it was wholly immaterial whether Canon knew of the Scott and Carmody claim, if they then had no title. The kind or character of the claim they then had is not disclosed. Crysup then had the superior title to the land; he had not conveyed to Willis, and Willis had not conveyed to Scott and Carmody. In fact, at the time of the execution and delivery of the oil and gas lease, Willis' rights to sue on the notes and to recover the land having become barred by limitation, Willis had no title to convey until he secured title from Crysup the day folowing the execution and delivery of the oil and gas lease to Canon. If Scott and Carmody had or claimed any interest in the land prior to the 23d day of March, 1918, such interest is not shown by the record.

[6] The assignments present error in the

introduction in evidence of the deeds of trust. The deeds were introduced as a circumstance tending to show a claim of ownership of the land in Willis, and a rescission of the conveyance from Willis to Crysup. We think it was not error to permit the deeds to be read in evidence, but, if error, it was not reversible error.

No evidence, other than the giving of the deeds of trust, having been offered to show ownership or a rescission of the conveyance, and the giving of the deeds of trust alone not being sufficient to effect a rescission, the deeds of trust could have been excluded on motion, but none was offered.

[7] We think the determining issue in the case arises on the construction and effect to be given to what is called the oil and gas lease, or mineral lease, contract executed and delivered by Crysup to Canon. Was it revocable at the will of Crysup? If so, was it revoked by Crysup by the deed from Crysup to Willis, or did Willis take the title subject to the oil and gas lease? The deed to Willis contained no reservation of the mineral right to Canon. Canon had not at that time, nor did he afterwards, enter upon the performance of the conditions contained in the mineral lease. The real consideration inducing the execution of the mineral lease was development, and the instrument failed to impose upon Canon any obligation to develop the minerals in the land. Canon acquired no title, but only a right to develop, which it seems to us could be revoked at any time by Crysup prior to entry by Canon if only a nominal consideration had then been given for the lease, and entry by Canon had not been made. But if it could be said that the right to revoke applies only in cases where only a nominal consideration has been paid and without entry, and that the cancelation of the debt owed by Crysup to Canon was not a nominal consideration, and for that reason the Crysup deed to Willis did not affect a revocation of the mineral lease, the issue then would be whether Willis, and afterwards, Scott and Carmody, were purchasers for value and without notice of the lease. But Scott and Carmody do not plead that they were purchasers for value and without notice, nor does the evidence show that neither Willis nor they had no notice of the lease. They pleaded that the lease was void on other grounds, and upon which no evidence was offered. We have concluded that the interest acquired by Canon, while only a right to develop the mineral in the land, it was a present vested right to enter and produce minerals, a vested legal estate and interest for a valuable consideration paid, and that such interest was not revoked by Crysup in the deed to Willis.

[8] If Scott and Carmody acquired the title to the land free of the mineral lease, it must have been by reason of a want of notice

of the lease, which was not pleaded nor proved. The burden was on appellees to plead and prove want of actual notice of the lease. Watkins v. Edwards, 23 Tex. 443; Baldwin et al. v. Root, 90 Tex. 546, 40 S. W. 3.

For reasons stated, the case is reversed, and here rendered in favor of appellant.

### On Motion for Rehearing.

Appellees urgently insist that this court is in error in holding that the bare execution of the two deeds of trust given by Willis to Dashiell to secure the Farmer's Guarantee State Bank did not effect a revocation of the Willis deed to Crysup.

For the sake of brevity we will not here repeat the facts at length, but will briefly refer to the facts as found and stated in the opinion. The facts stated are not controverted in the motion. The suit was brought to cancel the oil and gas lease given by Crysup to Canon, and to remove the cloud from title cast by said instrument.

Our holding on the issue presented in the motion was made in considering the fifth assignment, challenging the sufficiency of the evidence to sustain the judgment rescinding the Willis conveyance to Crysup. The sufficiency of the petition on the issue was questioned by a special exception which the trial court overruled, but we preferred to base our opinion on the facts as pleaded and as shown by the evidence.

This court did not hold, as stated in the motion, that the deed from Crysup to Willis, reconveying the land, did not effect a rescission of the Willis deed to Crysup. That deed evidently did reconvey the interest Crysup then had to Willis. But that deed was subsequent to the granting of the oil and gas lease sought to be canceled, and, as we take it, did not involve the question presented in the suit. The only evidence shown by the record of acts performed by Willis, repudiating the conveyance to Crysup, and done prior to the granting of the oil and gas lease, were the execution of the two deeds of trust.

Neither the pleading nor the evidence showed any act of repudiation other than the execution of the deeds of trust. Appellees' pleading and the evidence disclosed that Crysup had paid to Willis a portion of the purchase money prior to any act of Willis of repudiation of the conveyance. The evidence did not show that the purchase-money notes of Crysup to Willis had not been paid, nor that Crysup had refused to pay them, nor that Willis owned the notes at the time of the execution of the deeds of trust, nor had Willis canceled or returned the notes to Crysup, nor that Crysup was advised in any way of the intention of Willis to repudiate his conveyance of the land to Crysup.

[9] In Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88, it was held that, where there had been part performance by the vendee, as paying a portion of the purchase money, the vendee would be entitled to reasonable notice of the vendor's intention to rescind. The court there gives the reason for the rule. It is only where there has been no attempt to perform any part of the contract that the vendor may rescind without notice.

[10] In Tom and Wife v. Wollhoefer, 61 Tex. 277, the court said the remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land, and hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by suit. And where the vendor goes into an equity suit to set aside the sale he must tender the purchase money already received, or he will be defeated as not doing equity. The vendee when sued for the land may defeat the forfeiture, no matter how long he may have been in default, by tender of the money due. A similar holding was made in Estes v. Browning, 11 Tex. 247, 60 Am. Dec. 238, and in Thomas v. Beaton, 25 Tex. Supp. 321, and, so far as we have observed, the above is the uniform holding of the courts, under similar circumstances, down to the present time. It is not denied but that under circumstances, different from those appearing in this record, a forfeiture may be had by the vendor without suit to foreclose, or to recover the land. We have carefully reviewed the cases to which appellees have referred us, and, as we view them, they are not out of harmony with the cases to which we have referred, or our opinion.

Under some conditions, different from the facts here, the courts have held that a forfeiture of the conveyance could be had without a tender of the part consideration paid.

We might add here that the deed from Crysup to Willis, reconveying the land, and expressing the consideration to be the payment of $100 cash, and the cancellation and surrender to Crysup by Willis of the two notes, seems to us a reaffirmance by Willis of the conveyance by him to Crysup, and that he did not intend, by the two deeds of trust above referred to, to rescind the conveyance he had theretofore made to Crysup. This is strengthened, we think, by the fact that Willis had redeemed the land at least from one of the deeds of trust. Willis held the superior title, and the deed of trust was but the expression of a second lien on the land; it was not a sale or a parting with his title.

[11] We do not care to discuss the other features of the motion, as our views are fully expressed in the opinion. We, however, make a few verbal changes in the opinion as written, but not referred to in the motion, so as to express more clearly what we intended to express and thus avoid some apparent con-

fusion of statement. On page 9 of the opinion we now make that portion of the opinion to read: If the real consideration inducing the execution of the mineral lease was development, and the instrument failed to impose upon Canon any obligation to develop the minerals in the land, then Canon acquired no title, but only a right to develop which, it seems to us, could be revoked at any time by Crysup prior to entry by Canon, assuming only a nominal consideration had then been given for the lease, and entry by Canon had not been made. With the verbiage of the opinion changed to read as above, the motion is overruled.

---

⇔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes